UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
AUSTIN LANDI,                      :
                                   :
         Plaintiff,                :    Civil Action No. 07-cv-5319(FLW)
                                   :
     v.                            :
                                   :
BOROUGH OF SEASIDE PARK, et al.    :
                                   :    OPINION
         Defendants.               :
_____:

**WOLFSON, United States District Judge**:

   Presently before the Court is a Motion brought by Defendants County of Ocean ("Ocean"); Ocean County Prosecutor's Office ("OCPO"); and Investigator Petracca ("Petracca"), to dismiss all claims brought by Plaintiff Austin Landi ("Plaintiff"). Initially, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that Defendants Ocean, OCPO, Petracca, Patrolman Daniel Fitzgerald ("Fitzgerald"), Borough of Seaside Park, Seaside Park Police Department, and Seaside Park Chief of Police William Beining, and unnamed Seaside Park Police officers (collectively "Defendants") violated his First, Fourth, Fifth, and Fourteenth Amendment Rights when Petracca, Fitzgerald, and unnamed officers allegedly assaulted Plaintiff and subsequently harassed him on numerous occasions. In addition, Plaintiff asserts state law claims against Defendants, including (1) false arrest and imprisonment; (2) assault and battery; (3) malicious prosecution; (4) abuse of process; (5) negligence; (6) gross negligence; (7) civil conspiracy to

1

commit tort; and (8) negligent hiring, training, and supervision. For the reasons that follow, the Court grants OCPO and Ocean's Motion to Dismiss.  Further, the Court grants Petracca's Motion to Dismiss Plaintiff's 1983 claims asserted against him in his official capacity.  Finally, the Court denies Petracca's assertion of qualified immunity.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On May 23, 2004, Plaintiff was walking along Farragut Avenue in the Borough of Seaside Park.  Pl.'s Compl. ¶17.  At the time, Plaintiff was a sixteen year old high school student, standing five foot six inches and weighing 135 pounds.  Id. ¶18.  As Plaintiff walked by 35 Farragut Avenue, he noticed that its residents were having a party.  Id. ¶19.  Plaintiff stopped to observe the party from in front of the driveway.  Id.  As Plaintiff observed, a man dressed in a floral print-type shirt approached Plaintiff and told him that he should go back into to the house. Id. ¶20.  Plaintiff later identified this man in his Complaint as Investigator Petracca.  Id. Plaintiff explained that he was never at the party.  Id. At this point, Plaintiff alleges that Petracca started shoving him towards the house.  Id. Caught off guard, Plaintiff pushed Petracca out of his way and attempted to leave.  Id. Plaintiff alleges that another man in street clothes, later identified as Fitzgerald, ran toward Plaintiff and knocked him to the ground.  Id. ¶21. Once Plaintiff was on the ground, other officers, both in uniform and street clothes, began to kick Plaintiff.  Id. While on the ground, Plaintiff screamed that he had done nothing wrong. Id. ¶22.  After repeated blows to Plaintiff's body and head, Fitzgerald informed Plaintiff he was a police officer and placed Plaintiff under arrest.  Id. ¶21.  Plaintiff was then placed in handcuffs while still on the ground. Officers lifted Plaintiff up by his arms, again causing Plaintiff pain.  Id. ¶23.  Plaintiff claims that Petracca did not inform Plaintiff that he was an undercover investigator until after Plaintiff was

arrested.  Plaintiff's arrest resulted in Fitzgerald filing an allegedly false police report and complaint against Plaintiff.  Id. ¶25.

On several occasions following Plaintiff's arrest, members of the Seaside Park Police Department began to harass Plaintiff.  Plaintiff alleges that police officers "stopp[ed] his motor vehicle in an unwarranted fashion; stopp[ed] him walking along the street in Seaside Park with friends; and fil[ed] false and unwarranted motor vehicle charges." Pl.'s Compl. ¶26.  In an effort to put an end to the officers' harassment, Plaintiff's father contacted both the Chief of Police and the Municipal Prosecutor of Seaside Park.  Id.  Plaintiff alleges that as a result of the officers' assault, he suffered facial lacerations to his forehead and temple area, bruising to his right shoulder, injuries to his right arm and other parts of his body causing him pain and discomfort.  Id. ¶24. Moreover, the calculated harassment on the part of the Seaside Park Police Department left Plaintiff humiliated and emotionally distressed.  Id. ¶27.

Plaintiff initiated this action in United States District Court for the District of New Jersey on November 5, 2007.  Fitzgerald filed an Answer to Plaintiff's Complaint on February 14, 2008.  On March 17, 2008, Defendants Seaside Park, Seaside Park Police Department, and Beining filed an Answer.  Defendants Ocean, Petracca, and OCPO filed this Motion to Dismiss Plaintiff's Complaint on June 17, 2008.  On August 4, 2008, Fitzgerald's counsel, Guy P. Ryan, Esq., wrote a letter to this Court asking that Petracca not be dismissed as a Defendant in the case at bar as Petracca's alleged involvement is intertwined with that of Fitzgerald's.  For the following reasons, OCPO and Ocean's Motion to Dismiss is granted.  Further, Plaintiff's claims asserted against Petracca in his official capacity are dismissed as well.  However, the Court finds that Petracca is not entitled to qualified immunity for alleged actions taken in his individual capacity.

3

## II. DISCUSSION

### A. Standard of Review 12(b)(1)

Moving Defendants' assertion of Eleventh Amendment sovereign immunity is a challenge to this Court's subject matter jurisdiction. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996) ("Eleventh Amendment is a jurisdiction bar which deprives federal courts of subject matter jurisdiction."); Slinger v. N.J., No. 07-5561, 2008 WL 4126181, at *2 (D.N.J. Sept. 4, 2008). When jurisdiction is challenged pursuant to Rule 12 (b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In considering a motion pursuant to 12(b)(1), the district court must distinguish between factual and facial challenges to subject matter jurisdiction. Where a defendant contends that the plaintiff's complaint did not properly plead jurisdiction, the court need not consider extrinsic documents, and must "consider the allegations of the complaint and documents referenced therein and attached in the light most favorable to the plaintiff." Gould, 220 F.3d at 176; Mortensen v. First Federal Sav. & Loan Ass' n, 549 F.2d 884, 891 (3d Cir. 1977). Thus, "[w]here an attack on jurisdiction implicates the merits of plaintiff's federal cause of action, the district court's role in judging the facts may be more limited." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1090 (D.N.J. 1995) (citing Mortensen, 549 F.2d at 891).

Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings. Mortensen, 549 F.2d at 891. Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern

subject matter jurisdiction. Mortensen, 549 F.2d at 891. "When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." Medical Society of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing Gould Electronics, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). An assertion of the Eleventh Amendment is a facial attack, and as such, the Court will only consider Plaintiff's Complaint and any documents attached thereto.

**B. Eleventh Amendment Sovereign Immunity**

Defendants OCPO, Petracca, and Ocean contend that the Eleventh Immunity bars Plaintiff's claims. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The amendment precludes federal jurisdiction over a state absent the state's consent to suit. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). The immunity from suit extends to agencies, departments and officials of the state when the state is the real, substantial party in interest. Id. at 101-02; Alabama v. Pugh, 438 U.S. 781, 781 (1978).

Sovereign immunity applies "'even though the state is not named a party to the action as long as the state is the real party in interest.'" Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999) (quoting Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989). Thus, a plaintiff may not evade or circumvent a defendant's assertion of sovereign immunity by purposefully omitting the state as a formal party to a complaint. Chisolm v. McManimon, 275 F.3d 315, 322-23 (3d Cir. 2001). In Fitchik, the Third Circuit held that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury

5

or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." 873 F.2d at 659. In other words, sovereign immunity is appropriate if the named defendant is an "arm of the state." Davis v. Lakewood, No. 03-1025, 2005 WL 1863665, at *3 (D.N.J. Aug. 4, 2005) (citing Chisolm, 275 F.3d at 323).

    The Fitchick court also set forth a three factor test that this Court must use to determine whether each defendant is indeed an "arm of the state" entitled to sovereign immunity: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." Fitchik, 873 F.2d at 659; see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 948 F. Supp. 400, 4009 (D.N.J. 1996) (precluding suit where "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.'") (internal citation omitted). In applying this three-factor test, the Third Circuit noted that not all three factors are to be given equal weight; rather, the first inquiry, whether any judgment would be paid from the state treasury, is the most important question, and generally proves dispositive. Fitchik, 873 F.2d at 659; Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir. 2006); Davis, No. 03-1025, 2005 WL 1863665, at *3.

    In the instant matter, OCPO, Petracca, and Ocean contend that sovereign immunity bars Plaintiff's claims. The Court will discuss each in turn.

    **C. OCPO and Petracca in his Official Capacity**

    In his Complaint, Plaintiff alleges that OCPO failed to adequately train its investigators. OCPO contends its status as a state entity, under the supervision of the Attorney General for

6

the state of New Jersey ("Attorney General"), bars Plaintiff's claims.  As an investigator for OCPO, Petracca claims he was acting as an agent of the state, and as such, is entitled to sovereign immunity for any claims asserted against him in his official capacity. In response, Plaintiff argues that OCPO's training responsibilities fall outside the purview of official actions afforded sovereign immunity.

Turning to the first Fitchik factor, this Court must consider "whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment and whether the sovereign has immunized itself from responsibility for the agency's debt."  Fitchik, 873 F.2d at 659; Cooper v. SEPTA, 548 F.3d 296, 302 (3d Cir. 2008) (applying Fitchik factors).  When considering whether a county prosecutor's office is entitled to sovereign immunity, a court must first determine in which capacity the prosecutor's office was acting when the actions that gave rise to the plaintiff's claims took place.  Essentially, county prosecutors possess a hybrid status. The Attorney General "maintains a general supervision over. . .county prosecutors," primarily focused on the oversight "of an effective statewide law enforcement policy, i.e., 'obtaining effective and uniform enforcement of the criminal laws throughout the state.'" Coleman v. Kaye, 87 F.3d 1491, 1501 (3d Cir. 1996) (quoting N.J. Stat. Ann. 52:17B-103. However, neither the Attorney General nor the State is responsible for actions taken by a county prosecutor's office that are wholly unrelated to law enforcement policy.  In Coleman, the Third Circuit distinguished between nonactionable conduct, those tasks that are clearly prosecutorial and are related to New Jersey's law enforcement policy, and those that clearly fall outside the ambit of prosecutorial tasks:

> The Dunne court stated that "[c]ounty prosecutors' detectives possess a hybrid status."[Dunne v. Fireman's Fund American Insurance Co., 69 N.J. 244 (1976)]. Our review of New Jersey law has convinced us that the same can be said about county prosecutors. When county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State. But where, as here, the county prosecutor decided whether an employee at his or her office is worthy of an open promotion, the county prosecutor is performing an administrative function on the local level entirely unrelated to the duties involved in criminal prosecution.

Coleman, 87 F.3d at 1505-06. In fact, the State of New Jersey must defend and immunize county prosecutors for alleged "tortious conduct committed during the investigation, arrest, and prosecution of [a plaintiff]," unless the alleged miscnduct involves fraud, actual malice, or willful misconduct. Wright v. New Jersey 778 A.2d 443, 465 (N.J. 2001) (citing N.J. Stat. Ann. §§ 59:10A, 59:10-2). Here, the Court finds that the OCPO's training of investigators falls within the contours of prosecutorial tasks afforded protection under the Eleventh Amendment. In Coleman, the Third Circuit maintained that "administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator. . .[are in] effect acts on behalf of the county that is the situs of [the prosecutor's] office." 87 F.3d at 1499. Clearly, the training OCPO provides to investigators is imperative to the application of an overriding law enforcement policy meant to ensure "effective and uniform enforcement of the criminal laws throughout the State." N.J. Stat. Ann. 52:17B-103; see also Kandil v. Yurkovic, No. 06-4701, 2007 WL 4547365, at *1 (D.N.J. Dec. 18, 2007) (holding sovereign immunity applied to a county prosecutor's office, barring all of plaintiff's claims, including claims of negligent training and supervision). Further, the Attorney General is providing a defense to OCPO and indemnifying OCPO regarding all matters in this case, as is required by New Jersey law. Therefore, any judgment awarded to Plaintiff against OCPO would be paid out of the state

treasury.

Second, it is clear that under New Jersey law, OCPO is a state entity when performing its prosecutorial functions. In <u>Wright</u>, the New Jersey Supreme Court stated:

> When prosecutors perform their law enforcement function, they are discharging a State responsibility that he Legislature has delegated to the prosecutors. . .subject to the Attorney General's right to supersede. The legislative delegation, in combination with the Attorney's General supervisory authority and power to supercede, demonstrates that at its essence the county prosecutors' law enforcement function is clearly a State function.

778 A.2d at 462. Third, the Court finds that OCPO, when acting in its prosecutorial capacity, is not an autonomous entity. As previously stated, New Jersey law mandates that the Attorney General maintain a supervisory role over county prosecutors exercising and enforcing law enforcement policy. Moreover, the Attorney General is authorized to intervene and take over any investigation or prosecution initiated by county prosecutors. N.J. Stat Ann. 52:17-106B. Such authority cuts against Plaintiff's contention that OCPO remains an autonomous entity when training its investigators. Since the State of New Jersey has not consented to suit in federal court against itself, OCPO, or Ocean, the Court finds that Plaintiff's claims against OCPO must be dismissed.[1]

Plaintiff's claims asserted against Petracca in his official capacity as an OCPO investigator

---

[1] Although Plaintiff's Complaint formally names OCPO as one of the defendants in this matter, OCPO asks this Court to preemptively find Thomas Kelahar, Ocean County Prosecutor at the time, may not be sued in his official capacity for the foregoing reasons. This Court agrees. An amended pleading asserting the OCPO claims against Kelahar in his official capacity would be futile as the real party in interest would be the state. <u>See</u> <u>infra</u> Discussion Part E. Alternatively, OCPO argues that Kelahar is entitled to absolute immunity. However, because this Court finds that the Eleventh Amendment bars any claims against Kelahar in his official capacity, the Court need not determine whether Kelahar is entitled to absolute immunity.

must be dismissed as well.  Generally, asserting a cause of action against an individual in his or her official capacity is a plaintiff's attempt to circumvent the Eleventh Amendment and sue a state agency or entity of which the defendant is an agent.  <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 680 (1978); <u>Gregory v. Checi</u>, 843 F.2d 111 (3d Cir. 1988). As this Court has already determined that OCPO may not be sued, the same analysis applies to its agents working on behalf of the Attorney General.  Here, at the time of the alleged incident, Petracca was engaged in a law enforcement investigation under the supervision of the Attorney General.  Accordingly, Plaintiff's claims against Petracca in his official capacity are dismissed.

**C. The County**

Plaintiff asserts that Ocean failed to properly train and supervise investigators working for OCPO.  In response, Ocean argues that it maintained no role in the training or supervision of OCPO investigators or officials. Ocean also contends that OCPO and Petracca, acting in his official capacity, were agents of the state at the time of the alleged misconduct.  Thus, Ocean argues, the State, and not Ocean, is the real party-in-interest in the case at bar.  This Court agrees.

At the outset, the Court notes that Plaintiff's reliance on case law concerning improper training of police officers is inapplicable to the case at bar.  For instance, in <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996), the plaintiff sued the city of Pittsburgh for acquiescing to a department-wide custom of excessive force.  In construing the plaintiff's claims, the Third Circuit relied on the Supreme Court's ruling in <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), that a "municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially

adopted by the governing body or informally adopted by custom." Beck, 89 F.3d at 971 (discussing Monell). Nonetheless, the Monell Court restricted municipal liability to those instances where the municipality's custom or policy adversely affected the constitutional rights of the plaintiff. Here, taking Plaintiff's allegations as true, Ocean exercised no policy that regulated OCPO investigators or OCPO itself. In fact, New Jersey law forecloses Ocean from exercising any authority over OCPO with respect to law enforcement functions.

Turning to the first Fitchick factor, Ocean may not be held vicariously liable for the acts or omissions of agents of the State. See Davis, No. 03-1025, 2005 WL 1863665, at *5. If Ocean were to be held liable for the acts of OCPO and Petracca, the judgment would ultimately be paid through the State's treasury. Second, OCPO and Petracca, at the time of the alleged misconduct, were acting not on behalf of Ocean, but rather on behalf of the State, through the Attorney General's office. As to the third factor, Ocean is named as a defendant to both counts in Plaintiff's Complaint. However, the alleged misconduct of OCPO and Petracca occurred under the supervision of the Attorney General. Presumably, Ocean has no authority over OCPO and Petracca with respect to law enforcement policy. Thus, the Court holds that Ocean's motion to dismiss is granted.

**D. Persons Amenable to Suit Under 42 U.S.C. 1983**

Plaintiff's claims against OCPO, Ocean and Petracca alleging constitutional violations must be dismissed because they are not "persons" within the purview of 1983. Specifically, 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In order to be liable within the meaning of the statute, a defendant must be a person. In <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989), the Supreme Court held that a State, or an official acting in his or her official capacity for the State, is not a person within the meaning of 42 U.S.C. §1983. Specifically, the Court noted that Congress did not intend to override the immunity protections afforded to a state and its officials under the Eleventh Amendment. <u>Id.</u> Thus, a cause of action brought pursuant to §1983, cannot be asserted against the State, its agencies, or its officials acting in their official capacities. Accordingly, Plaintiff's § 1983 claims against OCPO, Ocean, and Petracca in his official capacity as an OCPO investigator are dismissed.

**E. Plaintiff's State Claims**

In addition to claims brought pursuant to 42 U.S.C. §1983, Plaintiff alleges a variety of state law claims, including (1) false arrest and imprisonment; (2) assault and batter; (3) malicious prosecution; (4) abuse of process; (5) negligence; (6) gross negligence; (7) civil conspiracy to commit tort; and (8) negligent hiring, training, and supervision. OCPO, Ocean, and Petracca seek dismissal of the claims, arguing that sovereign immunity bars state law claims against state entities.

Jurisdiction over Plaintiff's state law claims is governed by 28 U.S.C.A. § 1367(a), which states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C.A. § 1367(a).  A district court should decline to exercise supplemental jurisdiction over pendant state law claims "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995); see also United Mine Workers of America v. Gibbs, 38 U.S. 715, 726 (1966).  In the instant matter, this Court will exercise supplemental jurisdiction over Plaintiff's pendant state claims against Defendants OCPO, Ocean, and Petracca in his official capacity for the sake of judicial economy and convenience.

The Court finds that Plaintiff's state law claims against OCPO, Ocean, and Petracca acting in his official capacity as OPCO investigator are barred by the Eleventh Amendment.  The Eleventh Amendment provides that a court may not grant "relief against state officials on the basis of state law, whether prospective or retroactive." Pennhurst, 465 U.S. at 106.  In Pennhurst, the Supreme Court clarified that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.  A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Id. at 121 (discussing the tension between pendant jurisdiction and Eleventh Amendment jurisprudence).

Here, Plaintiff alleges that OCPO and Petracca in his official capacity, violated a number of state laws while executing their duties as agents of the state. As stated supra, Plaintiff's claims seek judgment that will ultimately be paid from the state treasury.  Additionally, OCPO is an agent of the state, acting under the auspices of the Attorney General.  Accordingly, Plaintiff's state claims against OCPO, Ocean, and Petracca in his official capacity as OCPO investigator are dismissed.

**F. Investigator Petracca in his Individual Capacity**

Finally, Plaintiff asserts claims against Petracca acting in his individual capacity. Petracca contends that even if he violated Plaintiff's constitutional rights, he is entitled to qualified immunity. Although this Court has dismissed Plaintiff's claims against Petracca in his official capacity as OCPO investigator, Plaintiff may properly assert a cause of action against Petracca in his individual capacity. Edward v. Samuels, No. 06-3758, 2007 WL 81884, at *6 (D.N.J. Jan. 8, 2007). Given "the importance of resolving immunity questions at the earliest possible stage in litigation," Saucier v. Katz, 533 U.S. 194, 200 (2001),[2] the Court must first determine whether Petracca is entitled to qualified immunity as a defense to Plaintiff's 1983 claims. Under the doctrine of qualified immunity, state actors performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). More simply stated, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 199 (2001) (citation omitted). This defense strikes a balance, shielding those officers from liability that mistakenly, but reasonably, believed their actions were lawful while permitting a plaintiff to recover against those defendants that knowingly violated the plaintiff's rights. Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007).

Recently, the Supreme Court modified the two-step qualified immunity test it set forth in Saucier. Under Saucier, this Court would first have to determine "whether there is even a wrong

---

[2]In addition, the Supreme Court stressed that "[t]he privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Saucier, 533 U.S. at 200.

14

to be addressed in an analysis of immunity." "If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." Curley, 499 F. 3d at 207. The second step of the Saucier analysis asks whether a reasonable officer would have known his conduct to be unlawful given the specific circumstances and facts of the case. Saucier, 533 U.S. at 199. In other words, a defendant is not entitled to qualified immunity if, at the time of the incident, the right that was violated was clearly established. Torisky v. Schweiker, 446 F.3d 438, 443 (3d Cir. 2006) ("This second inquiry 'must be undertaken in light of the specific context of the case.'").

However, in Pearson v. Callahan, – S. Ct. –, 2009 WL 128768 (2009), a unanimous Court relaxed the rigid two-step application of the Saucier analysis. By noting that in many instances a court need not reach whether a constitutional violation is alleged to determine if qualified immunity is appropriate,[3] the Court stated that the first prong "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Id. at *10. In addition, "[a]lthough the first prong of the first prong of the Saucier procedure is intended to further the development of constitutional precedent," the first prong "create[s] a risk of bad decisionmaking," specifically in those instances where a court decides a rather nuanced

---

[3]The Court also noted that in these cases, where it is evident that there was no violation of clearly established law, a lower court may not give proper consideration to the more crucial question of whether a constitutional violation is alleged, creating a risk of "'uttering pronouncements that play no rule in their adjudication.'" Pearson, 2009 WL 128768 at *11 (quoting Horne v. Coughlin, 191 F.3d 244, 247 (2d Cir. 1999)).

15

constitutional claim early on in litigation where the factual basis for the claims have not been fully developed through discovery. Id. at *10-11. Thus, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at *9.

Petracca contends that his contact with Plaintiff was de minimis and does not rise to the level of excessive force. The Court disagrees, however, with Petracca's characterization of the alleged misconduct and the events surrounding Plaintiff's arrest. Taking Plaintiff's allegations as true, Petracca asks this Court to deem objectively reasonable his use of force on a sixteen-year old child without cause. When construing an excessive force claim, this Court must consider whether the officer's use of force was objectively reasonable under the circumstances, regardless of the official's underlying motive or intentions. Graham v. Connor, 490 U.S. 386, 397 (1989). In Graham, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; see also Giles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005) (quoting Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (finding an officer was entitled to qualified immunity on excessive force claim "'after resolving all factual disputes in favor of the plaintiff, [ ] the officer's use of force was objectively reasonable under the circumstances.'" ).

Here, Petracca, based on the facts alleged in Plaintiff's Complaint, had no cognizable reason to even approach Plaintiff, let alone apply force. Although Petracca argues that "[m]erely telling someone to back inside and pushing him towards a house (and subsequently being shoved out of

16

the way by Plaintiff) surely cannot be seen as excessive force or unreasonable conduct for a police officer or civilian," Petracca fails to cite to any case in this Circuit that permits a law enforcement official to make repeated physical contact with a minor without cause.[4] A gleaning of Plaintiff's Complaint reveals no justification for Petracca's alleged conduct or that would make the use of force under the circumstances objectively reasonable. In fact, applying the reasonableness test set forth in Graham, the facts alleged do not indicate nor does Defendant argue otherwise that (1) Plaintiff had committed a crime or was in the process of doing so; (2) Plaintiff posed an immediate threat to Petracca, Seaside Park police officers, or the Seaside Park community at large; or (3) Plaintiff resisted arrest or attempted to evade arrest by fleeing. At its most basic level, Petracca, under the circumstances alleged, was not authorized to make any physical contact with Plaintiff. Moreover, the Court finds Petracca's assertion that he is not alleged to have personally assaulted Plaintiff is unavailing at this stage.[5] Even if Petracca did not participate in the allegedly violent group assault of Plaintiff, he is alleged to have made unprovoked and unauthorized physical contact with Plaintiff's person. Accordingly, this Court finds Petracca's alleged misconduct could constitute a violation of Plaintiff's right to be free from excessive force.

Turning to whether Petracca's conduct, under the circumstances, violated a clearly

---

[4] The Court notes that Plaintiff's actions in shoving Petracca after Petracca shoved him do not factor into this Court's determination of whether Petracca's initial physical contact with Plaintiff may violate the Eighth Amendment. Nevertheless, Plaintiff's reaction may prove probative to Petracca and other Defendants to the case at bar once discovery has been conducted.

[5] Petracca contends that the Complaint exonerates him from participating in the assault. However, the Complaint, read in a light most favorable to Plaintiff, reveals that Plaintiff was only able to explicitly identify Fitzgerald as one of his assailants. Indeed, the Complaint names numerous John Does as Defendants. Thus, it cannot be said with certainty, at this stage in the litigation, that Petracca is released from potential liability for the assault.

established right, this Court finds that Petracca could not have reasonably believed he was authorized to repeatedly shove Plaintiff without justification.  Taking Plaintiff's allegations as true, Petracca deliberately shoved Plaintiff against his will.  No reasonable individual in Petracca's position would have believed that the circumstances warranted such conduct.  As stated supra, Plaintiff presented no threat to himself, Petracca, or the community, and did not behave in a suspicious manner that warranted any attention.  Thus, the Court finds Plaintiff's allegations, on this motion to dismiss, demonstrate Petracca violated Plaintiff's clearly established right to be free from excessive force.  Accordingly, Petracca is not entitled to qualified immunity.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's claims against OCPO, Ocean, and Petracca in his official capacity are dismissed as they are barred by the Eleventh Amendment.  Further, Petracca's request for qualified immunity for alleged actions taken in his individual capacity is denied, at this juncture.

Dated: March 6, 2009                                                     s/ Freda L. Wolfson
                                                                                          Freda L. Wolfson, U.S.D.J.